

JUN 1 4 2023

PRO SE OFFICE

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

AMARACHUKWU EKEOMA,
      Plaintiff,

v.

THE CITY OF NEW YORK, et al.
      Defendants.

**AMENDED COMPLAINT**

Civil Action No. 23-cv-946 (AMD) (LB)
Civil Action No. 23-cv-474 (LGS)
[Trial by Jury Demanded]

---

Plaintiff, *Pro Se*, AMARACHUKWU EKEOMA, complains against the above-named

Defendant(s), for claims for relief. He alleges, and brings forth to the court as follows:

### I.    BASIS FOR JURISDICTION

A. This is a civil rights action under 42 U.S.C. § 1983 to redress the deprivation

under color law of Plaintiff's right to be free of excessive force and unlawful

arrest and for equal protection under the laws as secured by the Fourth and

Fourteenth Amendments of the United States Constitution.

B. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28

U.S.C. § 1343.

C. The venue is in the Southern District of New York and should be proper under 28

U.S.C. § 139(b)(2) since the events and conduct give rise to the Plaintiff, *Pro Se*'s

claims set forth in this here document take place within this judicial district.

### II.    PARTIES

A. Amarachukwu Ekeoma ("Amara" or "Mr. Ekeoma") is an adult citizen of the State of New York.

B. The Defendant, The City of New York ("The CoNY"), with its offices located at 100 Church Street, New York, NY 10007, is incorporated under the laws of the state of New York.

### III.   STATEMENT OF CLAIM

Place(s) of Occurrence(s): 115-15 170th Street, Jamaica, NY 11434

Date(s) of Occurrence(s): From On or Around January 2019 to June 13, 2023

### BACKGROUND

1. Plaintiff's local precinct has the 113th Precinct since 2006. All preceding incidents have been within the jurisdiction of the 103rd Precinct.

2. Mr. Ekeoma has been a victim of illegal searches since the Stop & Frisk era, with witnesses, including ordeals where Plaintiff, *Pro Se* has been accosted under false pretenses dating back to grade school.

3. Amara has been the victim of a vehicle shooting that occurred shortly after stepping into my home, where police response time was roughly 30 minutes. Mr. Ekeoma cannot confirm that an arrest was made, nor an investigation was conducted. It was not the Plaintiff's idea to call the police, as he was the legal owner of the vehicle. The NYPD are not responsive to Mr. Ekeoma when he is the victim. In 2022, Mr. Ekeoma requested the bullets be removed from the passenger door of the vehicle to help identify the type of weapon and after police viewed the vehicle and exit wounds for the bullets. Amara followed up with the precinct and was told no one ever came to look at the vehicle and that he imagined the whole ordeal like it never happened.

4. Amara has 3 siblings. They are Chidinma Ekeoma ("Nma"), his oldest sister, Nnanna Ekeoma ("Nnanna"), his older brother, and Onyejiekebeya Ekeoma ("Onyeji"), his older sister that is younger than Nnanna. They ("Amara's siblings" or "Mr. Ekeoma's siblings") are nurses who allegedly specialize in psychiatry and are registered to the New York State board of nursing. Nnanna is also registered in Texas.

5. Our mother, Mjiole Ekeoma ("MJ") is allegedly in the process of studying for & passing her NCLEX.

6. Our father, Okechukwu Ekeoma ("OU") has not been a part of most of the hoopla that revolves around the NYPD.

7. Amara has reported child abuse at a young age and the police neglected to do anything about it, to the Plaintiff's knowledge. The only request made by Mr. Ekeoma was to remove him from his family's care and foster care was a suitable alternative. Classmates from a young age have ridiculed and joked about the knots on Mr. Ekeoma's forehead in school, as there is clear evidence of child abuse.

8. Mr. Ekeoma was the sole member of the Ekeoma family over 18 years old that does not have diabetes until after his hospital visits in 2020.

9. Mr. Ekeoma has suffered tremendously due to the conduct of others, and at the discretion of the Defendant(s) and their cohorts.

10. Plaintiff, *Pro Se* has never had a "late" payment on any account to date, without the intervention of family members. Mr. Ekeoma has excelled academically without the interference of family members. Mr. Ekeoma has excelled in the workplace minus the intervention of family members as well. They make it a ritual to stifle the growth of Mr. Ekeoma.

11. Mr. Ekeoma has walked into the 113th Precinct at least 10 times, to report several crimes has almost always received pushback several times before he has been heard and even in those instances, no police report is taken and Mr. Ekeoma is escorted out of the precinct. Some of those crimes include, but are not limited to: Invasion of privacy, Conspiracy, Conspiracy to commit fraud, Attempted Voluntary Manslaughter, Attempted Involuntary Manslaughter, Racketeering, and crimes of that nature.

## FACTS

12. The CoNY governs the New York Police Department ("NYPD"). They establish the doctrines that train, supervise, and discipline the NYPD and its employees, as well as provide updates on policy and procedure. The NYPD are entrusted with the responsibility of providing Courtesy, Professionalism, and Respect while facilitating the reciprocity of those same qualities amongst the civilians they oversee.

13. In 2018, Gary St. Paul, a business associate of the Plaintiff, Pro Se informed him that Mr. Ekeoma would "Live forever," which Mr. Ekeoma interpreted as they viewed him as a snitch, or a mouse. Mr. Ekeoma then informed Nnanna of this conversation.

14. Unbeknownst to the Plaintiff, Pro Se, an ultimatum was presented where Amara would be kicked out of the house if he does not receive a psychiatric evaluation.

15. Amara's siblings and MJ drove Mr. Ekeoma to South Nassau Communities Hospital one weekend in late 2018 to admit him against his will. The hospital would not accept admissions on a weekend.

16. Nnanna, Nma, and Onyeji allegedly work at Bellevue Hospital as nurses on their behavioral health units. They did not consider the fact that Mr. Ekeoma was going to college and working.

17. A group of Mr. Ekeoma's friends accused him of being a snitch at Aldane Chambers' home, which is a basement he resides in at 193-02 120th Ave, Jamaica, NY 11434.

18. That group consisted of Aldane Chambers, Malcolm Bartlett, Matthew Hernandez, Kyle Johnson, Andrew Plummer, & Gary St. Paul. Phone records and cameras will be able to confirm who was in attendance and some of the goings on of that meeting.

19. Mr. Ekeoma was allegedly gifted Jordan B Peterson's "12 Rules for Life" from Aldane Chambers ("Aldane") and even received a visit to his home at 115-15 170th St, Jamaica, NY 11434, from the Visiting Nurses Service of New York in the name of Aldane Chambers for bipolar disorder.

20. Aldane has no medical background, to the Plaintiff Pro Se's knowledge, nor the cache and intelligence to make that kind of diagnosis in paragraph "19".

21. Mr. Ekeoma saw his Apple MacBook A1342 13" Late 2009 Core 2 Duo 2.26GHz 8GB RAM 500GB HDD OS was tampered with. It was upgraded years prior from 250 GB to

500 GB(Half 1 TB) of memory and a 1 TB Seagate external hard drive was purchased to back everything up.

22. The laptop included 5+ years worth of legal documents from Preemptive Process Servers and the clients that organization provides assistance to, the social security numbers of numerous individuals, phone numbers, home addresses, full names, and back-ups of iPhone data that includes the locations of several individuals. Those back-ups also held poetry and creative works dating back to 2009, an iTunes library with over 10,000 songs, a photo library with over 10,000 pictures and videos total including vacations, explicit photos of Mr. Ekeoma's former consorts (women) & media from The Café Open Mic, as well as other creative endeavors Mr. Ekeoma has been a part of. It laid the foundation for a production company Mr. Ekeoma planned on launching at the conclusion of acquiring a degree in Communication Arts. The external harddrive contained a back-up of the same information to 2018. That laptop was stolen in 2019.

23. In 2019, Amara's siblings cost him personal training sessions with client over the concept of being "concerned" about his mental health, where, at age 24, Amara was prohibited from going to work when I needed to. They helped destroy Mr. Ekeoma's reputation as a trainer at work.

24. This is a normal occurrence since 2013, which has made it appear as if Amara has tardiness issues. The selfish shenanigans go back to Mr. Ekeoma's days at Preemptive Process Servers where they would intentionally inconvenience him to make him late.

25. In March of 2019, Taj Bailey from NYHRC said "Amara, I could kill your whole family." A couple weeks later, at the 23rd street location, as Taj was walking by Mr. Ekeoma, he uttered "Oh well. Psh" accompanied by a gunshot signal to Amara's head. About two days later, Mr. Ekeoma blood cousin, Chima Ogbonnaya ("Chima"), was a headshot victim, according to Nnanna and public information.

26. Mr. Ekeoma's cousin died as a headshot victim and was on "life support" for a few days before passing on March 15, 2019 in which we all flew to Houston, TX from New York City for an impromptu funeral. The police later "solved" that murder, but my independent research ties a Pallbearer to the shooter. He left the funeral after we locked eyes.

27. Plaintiff, Pro Se left a note at Bianca Stewart's house at 194-20 110th Ave, Queens, NY 11412, that "In case I die, please give my family the money you owe me, it would help cover my funeral." The police were then sent to Mr. Ekeoma's home for a "Wellness Check" in reference to a suicide note.

28. Amara informed the police that he never wrote a suicide note & Onyeji said "Yes, you did!" Amarachukwu Ekeoma is not a suicidal individual.

29. Before my departure from NYHRC in June of 2019, Taj said to Mr. Ekeoma: "Do me a favor. Say you're schizophrenic." William Bartlett did the same thing in 2018. His words were: "Amara, you schizophrenic, right?" Mr. Ekeoma does not hear voices.

30. After Mr. Ekeoma's departure from NYHRC, Nnanna physically grabbed him and threw Mr. Ekeoma out of the house, alongside Onyeji. MJ witnessed and MJ was the only one who would allow Mr. Ekeoma back into the house.

31. At other times, Mr. Ekeoma been prohibited from leaving the house and it has cost him employment as well. It is hard to keep a job when you live with the enemy of progress. Mr. Ekeoma has even contemplated sleeping in a storage unit as there were no other alternatives outside of being homeless.

32. Mr. Ekeoma was coerced into ultimatum's of "Go to the hospital or get out." That has led to numerous visits to the emergency room at several hospitals at hands of his family members. He has been paying rent since 2013 and contributing to the household since 2010.

33. Mr. Ekeoma has found himself pinned faced down with Nnanna's knee in his back, Onyeji's feet stepping on his ankles and Nma watching, but cheering them on as Amara does not resist and displayed no aggression to anyone. Amara asks why this is happening and the only response is because Mr. Ekeoma "deserves" it. Amara's siblings are Psych Nurses.

34. The EMS worker who was taking Mr. Ekeoma to Long Island Jewish Medical Center in January of 2020 had Amarachukwu Ekeoma's name written down with the incorrect

spelling and the word "Schizophrenia" written down on a piece of paper. Mr. Ekeoma did not provide any of that information. Body camera footage may reveal who wrote it.

35. MJ insisted Mr. Ekeoma have his brain scanned or he could not live with them anymore. Despite Amara's better judgment, he complied. In his mind, it was "keep being oppressed or just say you're a schizophrenic so your family stops antagonizing you."

36. As Amara is studying micronutrients and the muscles of the body, transitioning himself into healthcare, someone is completely taking his study materials and his clothing. No one has owned up to it or taken accountability for it. Nnanna even teased Mr. Ekeoma about it while admitted to Zucker Hillside Hospital; As a punishment for "who-knows-what," the only food in the house for about 6 months after Mr. Ekeoma's release from Zucker Hillside Hospital in February of 2020 were potatoes.

37. Mr. Ekeoma discovered that the external harddrive mentioned in paragraphs "21 & 22" was missing after his discharge from Zucker Hillside Hospital in February of 2020. No one in the household of 115-15 170th St, Jamaica, NY 11434 claimed responsibility for its disappearance. Mr. Ekeoma has only hadd Shanise Shirley and Aryanna Real in his room since 2018.

38. The Ekeoma family would not let Amara exercise in the house and often prevented him from leaving. Nnanna bought them. Mr. Ekeoma was teased about a carb-heavy diet at Zucker Hillside Hospital during his second involuntary admission to the facility.

39. They gave Amara diabetes intentionally. Mr. Ekeoma had a 36" vertical leap since he was 12 years old and the athleticism of an Olympic Athlete.

40. Plaintiff, Pro Se finds himself admitted to the hospital several times, while not being the aggressor. This becomes the norm for what eventually becomes more than 3 years.

41. The family has been trying to admit Plaintiff, Pro Se to the hospital since 2018, while Amara was working and getting an education. In almost every instance, Nnanna, Onyeji, and Nma have been the aggressors. Even MJ has been an aggressor, once.

42. On one occasion, Nnanna pushes MJ down to the floor to attack Amara and Mjiole calls the police and Plaintiff, Pro Se gets taken to the hospital while not being the aggressor. During another 9-1-1 call, Onyeji is screaming as if she is being attacked & the Plaintiff looks at her from about 6 feet away, in awe. There are so many instances of mob mentality clouding the police's judgment.

43. After receiving so many psychotropic drugs, Amara lost his mind. Amara got a Hertz rental car and drove across the eastern seaboard just to get away from his oppressors and free his mind.

44. He had no intention of coming back home to mental health workers who could not differentiate work from everyday living. They lost their grip on reality. They would kill Mr. Ekeoma and the police would allow them to.

45. A drunk driver hit that rental car referenced in paragraph "43". Mr. Ekeoma called the police, let them know the driver was drunk and the drunk driver drove off. Mr. Ekeoma refuses to risk his life over a drunk person whose actions could be unpredictable.

46. The police showed up with their body cameras off, which is illegal, and did nothing. They didn't even take a police report. They said they didn't have to.

47. Mr. Ekeoma reported identity theft to the police after consistent attempts since the beginning of COVID-19, which included the use of his information in Georgia. That is information acquired via a Google search that showed the information was in use until 2021. Amara has never been to Georgia for any reason. When a military recruit looked up Mr. Ekeoma's information, they mentioned the information being "out of Kansas City," in which Mr. Ekeoma asked no questions. There was also an erroneous Uber transaction that was not reconciled.

48. On or around December 10, 2020, Plaintiff may have been wrongfully arrested at 115-15 170th Street, Jamaica, NY 11434. The arresting officer informed OU that they were looking for his son. OU has 2 sons to date, Nnanna and Amara, who are both similar in height, weight, and overall build.

49. OU allowed the police into the home. Amara was immediately handcuffed. Upon asking why, was informed that the victim of the crime claimed the suspect was the next door neighbor's son. When Mr. Ekeoma asked what crime was committed, the police told him they didn't have to give out that information.

50. Mr. Ekeoma was placed in a squad car. When asked why Amara had not been mirandized and told the crime he'd been accused of, the NYPD officers were not really responsive. Amara was brought to the local precinct and taken through what is believed to be the process.

51. The details of the arrest were not specific enough to have a sole perpetrator as Nnanna and Amara look very much alike. At no point in time did Nnanna inform anyone that he was questioned by the police or taken into custody to determine which one of the two sons was the actual suspect. The crime occurred at night time and was caught on camera, but you cannot tell who the perpetrator is. It's way too dark.

52. Plaintiff, Pro Se was arrested for Violating the Order of Protection ("VoP") that came with the preceding arrest. Mr. Ekeoma lost his job that day and was not presented evidence proving him guilty. The VoP lead to a 1-year extension of the Order of Protection, which would've expired far sooner, had it not been for the incident in question.

53. Mr. Ekeoma has witnessed Nnanna grab his track pants off the line in the backyard. When Nnanna sees Amara standing at the backdoor as Nnanna attempts to re-enter the house, Nnanna turns right back around to hang Amara's pants back up. He knows the clothing does not belong to him.

54. One day, Amara reported an item stolen to the police department and Onyeji pointed it out to him the next day. It's as if the police & the Ekeoma family are colluding against Mr. Ekeoma.

55. Plaintiff, Pro Se has been kicked in the chest by Nnanna, which broke Amara's bedroom door. Please see Exhibit. Upon standing back up, tackled back down to the ground. Nnanna has choked Amara with a baseball bat as well. When Mr. Ekeoma calls the police, as the victim he is removed from the premises which leaves Mr. Ekeoma helpless in a lose-lose situation.

56. Plaintiff, Pro Se has fallen asleep in his home and woken up to a burn scar under his eye and the feeling of injections at the bottom of his right foot. Plaintiff has received no information about an investigation. Plaintiff's packages have been "stolen" on camera and the police have informed him that there is no camera. All have been reported, except the potential needles to the foot. Mr. Ekeoma has heard officers refer to the needles in the house as a "crackhead" situation, though they are believed to insulin.

57. On August 27, 2022, Mr. Ekeoma called the police about Nnanna not being himself as he'd been acting erratically and causing trouble, which ended in Amara being handcuffed and taken the hospital after the police emptied Amara's pockets and dropped Mr. Ekeoma's belongings haphazardly. They violated Mr. Ekeoma's Fourth Amendment rights as there was no plausible reason for the search or seizure of his property, nor himself from the premises. The items the police removed from Mr. Ekeoma's pocket have not been retrieved. At least one of those items is a set of brass knuckles. The entire ordeal was caught on body camera footage.

58. When Amara got back from the hospital on August 28, 2022, he was locked out and so was OU, allegedly. Nnanna would not open the door to let Mr. Ekeoma and OU inside the home they live in. The police were called and spoke to Nnanna about letting OU & Amara back in the house. He eventually gave way.

59. Mr. Ekeoma & OU were let into the house. Mr. Ekeoma made it a point to expose Nnanna as a performer when the cameras are on. Amara explained to the officers about a situation where Nnanna kicked Mr. Ekeoma in the chest, through Amara's bedroom door and when Amara got up, Nnanna tackled him to the floor. Nnanna was then placed a very light headlock until he calmed down. The door broke off the hinges when Mr. Ekeoma got kicked. Mr. Ekeoma has no idea what the motivation for this behavior has been and does not know what is wrong with his family.

60. The only part of this interaction that may not have been caught on body camera footage is when Officer Iglesias' partner turned his body camera off to explain to Nnanna that he could "have his credentials revoked for this" which Mr. Ekeoma overheard from a distance. That is in response to kicking Mr. Ekeoma in the chest and then tackling him.

61. Nnanna is a fitness enthusiast, has attended iLKB, & may have played football in high school.

62. Someone who has had access to the living room at 115-15 170th Street, Jamaica, NY 11434 has confiscated or stolen Mr. Ekeoma's FreeStyle Precision Neo as well as Blood Pressure Monitor, which qualify as life saving equipment. This prohibits tracking the health status of Mr. Ekeoma and any other individual he intends to use the devices on. They are life saving, and are crucial to survival. Someone wants Mr. Ekeoma dead. It's voluntary manslaughter on everyone's account.

63. On or around November 19th, 2022, the police were called to 115-15 170th Street, Jamaica, NY 11434. Mr. Ekeoma was approached by Officer Delorio. After one question, Mr. Ekeoma was immediately handcuffed. No explanation was given for the Plaintiff, Pro Se's detainment. Amara was trying to understand the purpose of the handcuffs. Officer Delorio then picked Amara up, bent Amara over, and forced Amara's face against his fence. Mr. Ekeoma does not know if Officer Delorio was a homosexual or if that turned him on or if that made him feel powerful, but as a victim of sexual assault, it made Mr. Ekeoma extremely uncomfortable. Delorio is a physically imposing man and

perpetuates the NYPD's stance that Mr. Ekeoma is subhuman by carrying him to the front of the residence like a paperweight. Mr. Ekeoma was accused of menacing, and informed that a psychiatric evaluation was to be done.

64. Several police officers dropped him viciously on his right shoulder onto a stretcher, whom were already informed was injured. It caused Mr. Ekeoma a great deal of pain. After given the option of the hospital & jail, and selecting jail, Mr. Ekeoma was taken to the hospital. Nnanna may have chosen the specific hospital. Body camera footage should've caught the entire ordeal. Amara's handcuffs were extremely tight, which he complained about to officer Greco, who rode with him to the hospital. Mr. Ekeoma complained of his hands feeling numb and blood pressure being off. The officer assured the tightness level was standard protocol. Mr. Ekeoma's blood pressure was through the roof at the hospital and police officers witnessed negligence and professional misconduct on the part of Northwell Health, Inc. and its employees.

65. The police also witnessed some of the damage caused to Amara's right shoulder. It should be visible on Long Island Jewish Medical Center's camerasa as well. When the handcuffs were removed, Plaintiff, Pro Se had bruises on his wrists from how tight the cuffs were. They are still visible as of February 25, 2023. Please see Exhibit. Amara has no recollection of anything that happened after he fell asleep at the hospital until he regained my consciousness at home. Mr. Ekeoma still deal with constant wrist pain as well as pain in his right shoulder.

66. During a traffic stop on March 16, 2023, Mr. Ekeoma was asked to step out of his vehicle. It led to Amara being handcuffed, and almost tased by a police officer while in handcuffs. That gave Mr. Ekeoma quite a psychological scare, including the fear of being shot, tasered, and his body's neurological disorders potential adverse effects to shock.

67. Mr. Ekeoma is now dealing with a Traumatic Brain Injury as a result of the chemical reactions to medication administered to him against his will at Northwell Health, Inc.'s facilities. Please see Exhibit. His first psychiatric evaluation was due to a laptop Nnanna couldn't locate. Since then, the police have witnessed the tampering of Amara's laptop and been given accurate information as to how Mr. Ekeoma has been abused and taken advantage of and nothing has been done to reconcile his situation.

68. Since 2018, they've been confiscating and hiding my education and work materials as well as my electronics. On more than one occasion, they've completely locked out my iPhone where it would have to be completely reset. Of the information lost, there is a video of me recording an officer at the 113th Precinct flat out telling Mr. Ekeoma he would not be of assistance (in 2020). The Ekeoma family does not keep their house clean. They are filthy people with terrible mental health and physical health habits.

69. Either the police or the EDP status that Mr. Ekeoma has, has allowed his oppressors an innumerable amount of leeway to abuse and oppress him. The police have granted them carte blanche to beat the mess out of Mr. Ekeoma without known repercussion. When Mr. Ekeoma calls and reports as the victim, he has been taken to the hospital due to being

outnumbered in this situation. Mr. Ekeoma feels he does not have any rights. Mr. Ekeoma underwent therapy via a social worker on a regular basis from January 2023 – June 2023 to overcome oppression and has almost zero positive interactions with the police department. Amara is not a human being. Human beings have rights.

70. On more than one occasion, directly and indirectly, Mr. Ekeoma has been told he does not have rights. He'd rather not call, or speak to the police in general. It would be a waste of tax dollars. I can solve my own problems without a third party's intervention. It is normal that when Amarachukwu Ekeoma calls the police, they don't show up entirely.

71. Amara left New York City and went to an Albany homeless shelter only to be sexually harassed by several males, one of which who pressed his "manhood" on my buttocks, while fully clothed. Others have molested me in my sleep with me waking up to one caressing my "manhood." All incidences have been caught on camera and the police have done nothing about it. Those incidents took place in Albany as a result of Mr. Ekeoma's local situation.

72. Plaintiff has been the victim of a car shooting in the past which the police response time was about 30 minutes while the EDP calls over the course of this 3+ year time frame have been about 5-10 minutes on average. A "crazy" person in a controlled environment is a higher priority that a "crazy" person in an uncontrolled environment?

## IV.    RELIEF

1. The sealing of all Mr. Ekeoma's hospital admissions under Mental Hygiene Laws.

2. The prevention of Mr. Ekeoma being an involuntary admission to any behavioral health unit for the duration of this lawsuit.

3. The prevention of Mr. Ekeoma being arrested by NYPD for the duration of this lawsuit.

4. The investigation of allegations and come-uppances regarding Amarachukwu Ekeoma.

5. The replacement value of belongings stolen from Mr. Ekeoma.

6. An investigation into all interactions with NYPD, including body camera footage, calls to dispatch, and interactions of the sort that have anything to do with the Ekeoma family.

7. The arrests of Nnanna, Onyeji, Chidinma, and MJ.

8. The arrests of William Bartlett, Aldane Chambers, Malcolm Bartlett, Cody Celestin, Matthew Hernandez, Kyle Johnson, Andrew Plummer, Gary St. Paul, & Yasmin Castro.

9. Bianca Stewart and whomever her cohorts may be.

10. The arrests of Mr. Ekeoma's sodomizers, Shanise Shirley & Aryanna Real.

11. The arrests of any and everyone that can be arrested with the facts/allegations herein.

12. The name of the individual who was arrested for shooting my vehicle.

13. All transactions to Plaintiff, Pro Se's Capital One credit card account after his tenure at NYHRC and all other debts incurred from that point on to be the financial responsibility of the Ekeoma family.

14. The arrest of the hospital's employees/administrators who are aware that the medication they are forcibly administering to Mr. Ekeoma (and potentially others) kills people, causes heart attacks, and amputations; They are not checking for contraindications. They are just drugging the Plaintiff, Pro Se haphazardly.

15. The monetary value of all hospital visits from 2019 to present day, as they are all a result of the carte blanche given to the Plaintiff, Pro Se's aggressors.

16. Wages lost from 2019 to present day.

17. Full reimbursement of the travel expenses going back & forth to the Capital Region from New York City.

18. In the matter of the value of the information on Mr. Ekeoma's laptop, iPhone, & external harddrive, the relief sought is **$100,000** to be split evenly by the criminals in question as part of their restitution. That is, 2 different splits between the Ekeoma's **$100,000** and Mr. Ekeoma's associates' **$100,000** (and a split for any other culprits).

19. In the matter of police misconduct and the carte blanche allowed when Mr. Ekeoma is the victim, Plaintiff, Pro Se seeks **$100,000,000** from The CoNY.

## V.   PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so inteified, will

20

likely have and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

_____        June 13, 2023
Plaintiff's Signature                    Dated

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

AMARACHUKWU EKEOMA,
           Plaintiff,

      v.

THE CITY OF NEW YORK, et al.
           Defendants.

**AFFIDAVIT OF SERVICE**

Civil Action No. 23-cv-946 (AMD) (LB)
Civil Action No. 23-cv-474 (LGS)
[Trial by Jury Demanded]

I, Okechukwu Ekeoma, being duly sworn says: I am not a party to the action, am over 18 years of age and reside at 115-15 170th St, Jamaica, NY 11434.

On June 13, 2023, I served a true copy of the following papers: Summons & Complaint, on **The City of New York**, by delivering to and leaving with Ariton Marke, Deputy Unit Chief, a true and correct copy of said documents.

At the time of said service, Ariton Marke stated that he is duly authorized to accept service of legal documents on behalf of The City of New York, and further acknowledged service by endorsing a copy of the aforementioned Summons. Said acknowledgement is attached hereto.

Ariton Marke is described as a white male, approximately 35-45 years of age, 150-170 lbs., 5'6"-5'8" tall, with a ponytail.

A copy of those same documents were served by mailing in a sealed envelope, with postage prepaid thereon, in a post office of the USPS within the state of New York, addressed to:

The City of New York

100 Church Street

New York, NY 10007

_____

Okechukwu Ekeoma

Sworn to before me, this

14th day of June, 2023

_____

Notary Public

JENNIFER C AJAH
NOTARY PUBLIC NEW YORK STATE
REG. No. 02AJ6398018
QUALIFIED IN NASSAU COUNTY
COMM. EXPIRES OCT. 15, 2023