UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                              :
**AMARACHUKWU EKEOMA**,                                       :
                                                              :
                              Plaintiff,                      :
                                                              :   **MEMORANDUM DECISION AND**
                                                              :   **ORDER**
                – against –                                   :
                                                              :   23-CV-946 (AMD) (LB)
                                                              :
**THE CITY OF NEW YORK**, *et al.*,                          :
                                                              :
                              Defendants.                     :
                                                              :
------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The *pro se* plaintiff originally brought this 42 U.S.C. § 1983 action against the City of

New York and the New York City Police Department ("NYPD").  The plaintiff has since filed

three amended complaints.

Before the Court is the plaintiff's motion to file a fourth amended complaint.  The

proposed complaint is 119 pages long and seeks to add 29 new defendants, including Mayor Eric

Adams, NYPD Commissioner Edward Caban, NYPD First Deputy Commissioner Tania

Kinsella, NYPD Chief of Department Jeffrey Maddrey and 25 NYPD Officers.[1]  For the reasons

discussed below, the plaintiff's motion is granted in part and denied in part.

## BACKGROUND

**I.      Procedural History**

The plaintiff brought this action on January 19, 2023, alleging that his family members

made "false police reports claiming he was an . . . Emotionally Disturbed Person," and that

unnamed police officers falsely arrested him in December 2020 and used excessive force on

---

[1] Some of the proposed NYPD officers-defendants are detectives, lieutenants, or sergeants.  The Court
refers to all of them as "Officer" for simplicity.

November 19, 2022.  (ECF No. 1.)  His original complaint named only the City of New York

and the NYPD as defendants.  (*Id.*)  He amended the complaint on June 13, 2023, adding

additional factual detail (ECF No. 12), and again on June 14, 2023, changing only the formatting

(ECF No. 13).  On July 6, 2023, Magistrate Judge Lois Bloom directed the City to identify the

NYPD officers involved in the alleged incidents underlying the action, and granted the plaintiff

leave to file an amended complaint naming the individual officers he wished to sue.  (ECF No.

19.)  On July 24, 2023, the City filed a letter identifying seven current NYPD officers and one

former NYPD officer.  (ECF No. 20.)

## II.    Third Amended Complaint

On August 23, 2023, the plaintiff filed a third amended complaint ("3AC"), removing the

NYPD as a defendant and adding four named NYPD Officers — Officers Steven Allen, Scott

Blackburn, Christopher Colello, and Drew Tatzel — and "'John Doe' Officers 1-30+" as

defendants.  (ECF No. 22.)[2]  In this 45-page complaint, the plaintiff details "negative police

interactions" dating back to when he was in "junior high school."  (*See id.* ¶ 7.)  He seeks various

forms of relief, including money damages, the arrests of his family members, and "a handwritten

& signed apology" from certain NYPD officers.  (*See id.* at 36–37.)

The allegations in the 3AC are summarized below.

### a.    Law Enforcement Officers

The plaintiff alleges that when he was "a student in junior high school," he "was

reprimanded by . . . Officer Cain (or Caine or Kane) from the 103rd Precinct, for spitting on the

sidewalk on his way out of a pizza shop."  (*Id.* ¶ 7.)

---

[2] None of the four named officers in the 3AC were named in the City's July 24, 2023 letter.

"[I]n 2012,"[3] a "white male 'John Doe'" and a "black male 'John Doe' police officer"
searched the plaintiff and his friend after pulling them over in a "vehicle [reported] stolen at gun
point." (*Id.* ¶ 9.)  The plaintiff "was vocal about not stepping out of the vehicle" but "was
forcibly removed [from] the vehicle [which] was searched anyway." (*Id.*)  The plaintiff alleges
that he and his friend were frisked, but "[the plaintiff] was the only person who had his genital
area frisked." (*Id.*)

"On October 19, 2017, around 1:30 AM," a "white, male 'John Doe' Police Officer"
pulled the plaintiff over as he was driving his co-worker and her friend home. (*Id.* ¶ 11.)  The
plaintiff told the officer that he had not been smoking and that there were no drugs in the car, but
consented to a search of his vehicle. (*Id.*)  After the officer searched the trunk, he asked the
plaintiff and his friend to step out of the vehicle. (*See id.*)  The officer did an additional search of
the car and confiscated "about $120 worth of marijuana." (*Id.*)  The plaintiff alleges that the
officer did not "mention . . . the way [he] was driving," that "[he] received a Summons that night
& it was not traffic related" and that "[t]here was no traffic infraction committed" that night.
(*Id.*)

"On December 8, 2017, around 12:35 AM," Officer Joseph Contessa[4] approached the
plaintiff's vehicle while he was parked and "working on his studies" with his friend. (*Id.* ¶ 12.)
Officer Contessa "confiscate[d] the marijuana [the plaintiff's friend] was in possession of and
inform[ed] the pair that they'd be receiving Summonses." (*Id.*)

---

[3] The plaintiff does not specify the date on which this incident occurred.

[4] Contessa is not named as a defendant in the 3AC.

"In 2018,"[5] the plaintiff sat parked in a rental car in front of a friend's home when two unnamed officers approached him and "requisitioned [the plaintiff] for license & registration." (*Id.* ¶ 13.)  "Everything checked out fine" and the officers left.  (*Id.*)

On July, 3, 2020, the plaintiff "called 9-1-1 to report to the police"[6] and the "black 'John Doe' Officer & a white 'Jane Doe' Officer" that arrived merely "collected [the plaintiff's] signature, spun around in a circle and ran back to their police vehicle and drove off."  (*Id.* ¶ 45.)

The plaintiff alleges that the next day, July 4, 2020, he "went to the 113th Precinct to report several thefts," only to be told by a "John/Jane Doe Officer" that he was not making sense. (*Id* ¶ 46.)  That officer referred him to Officer Steven Allen,[7] who "found ways to say '[w]e are not going to help you.'"  (*Id.*)  The plaintiff does not provide further details about this exchange.

On October 10, 2020, the plaintiff "had an interaction with" Officer Kenneth Miklas and Officer Christophe Ryder, but provides no further details.  (*Id.* ¶ 57.)

On December 10, 2020, unnamed NYPD officers arrived at the plaintiff's family home and told the plaintiff's father that they "were looking for his son."  (*Id.* ¶¶ 63–64.)[8]  The plaintiff alleges that the officers "immediately handcuffed" him even though the plaintiff also has a brother who is "similar in height, weight, and overall build."  (*Id.*)  The officers told the plaintiff that "the victim of [a] crime claimed the suspect was the next door neighbor's son."  (*Id.*)  The plaintiff was then "brought to the local precinct."  (*Id.*)  He alleges that he was given an "Order of Protection" and that he was subsequently "arrested for [v]iolating the Order of Protection . . .

---

[5] The plaintiff does not specify when in 2018 this occurred.

[6] The plaintiff does not say what he told the police.

[7] Allen is a named defendant in the 3AC.

[8] The plaintiff described this incident in his original complaint.

for remarking that the community he lived in was riddled with snitches." (*Id.* ¶ 65.)  The plaintiff does not provide the date of the subsequent arrest.

On February 20, 2021, another driver hit the plaintiff's rental car, which was parked in his driveway. (*Id.* ¶ 60.)  The plaintiff smelled alcohol on the driver's breath, and asked him whether "he had been drinking," to which the driver "[answered] in the affirmative."  (*Id.*)  The plaintiff called the police, and the driver drove away.  (*Id.*)  Unnamed officers "showed up with their body cameras off" and did not "take a police report."  (*Id.* ¶ 61.)

On August 27, 2022, the plaintiff "called the police" because his brother had "been acting erratically."  (*Id.* ¶ 69.)  Unnamed officers arrived, handcuffed the plaintiff and took him to the hospital.  (*Id.*)  The plaintiff alleges that "items the police removed from the plaintiff's pocket have not been retrieved," including "a set of brass knuckles."  (*Id.*)

The plaintiff returned home from the hospital on August 28, 2022, but his brother locked the plaintiff and their father out of their house.  (*Id.* ¶¶ 70–72.)  "The police were called,"[9] and "Officer Iglesias"[10] and an unnamed officer arrived.  (*Id.*)  When the officers convinced the plaintiff's brother to open the door, he and the plaintiff started fighting.  (*See id.*)  The plaintiff alleges that "from a distance" he overheard "Officer Iglesias' partner turn his body camera off to explain to [the plaintiff's brother] that he could 'have his credentials revoked for this.'"  (*Id.*)

The plaintiff alleges that on November 19, 2022, "the police were called" to his family's home, but does not say who called the police or why.  (*Id.* ¶ 75.)[11]  Officer Delorio[12] arrived, and "[a]fter one question," "immediately handcuffed" the plaintiff without "explanation."  (*Id.*)

---

[9] The plaintiff does not say who called the police.

[10] Iglesias is not a named defendant in the 3AC.

[11] The plaintiff described this incident in his original complaint.

[12] Delorio is not a named defendant in the 3AC.

Delorio "picked [the plaintiff] up, bent [him] over, and forced [his] face against his fence."  (*Id.*)
Delorio "accused [the plaintiff] of menacing, and informed that a psychiatric evaluation was to
be done."  (*Id.*)  "Several" unnamed officers then "dropped [the plaintiff] viciously on his right
shoulder onto a stretcher" even though the plaintiff had "informed [them that it] was injured."
(*Id.* ¶ 76.)  The unnamed officers gave the plaintiff "the option of the hospital & jail," and the
plaintiff selected "jail, [but] was taken to the hospital."  (*Id.*)  The plaintiff's "handcuffs were
extremely tight," "which he complained about to Officer Greco,[13] who rode with him to the
hospital."  (*Id.*)  When the handcuffs were removed at the hospital, the plaintiff "had bruises on
his wrists from how tight the cuffs were," which "were still visible up until about March of
2023."  (*Id.* ¶ 77.)  The plaintiff "still deals with constant wrist pain as well as pain in his right
shoulder."  (*Id.*)

On March 16, 2023, a "white male 'John Doe' officer" pulled the plaintiff over and
"informed [him] that his vehicle did not have license plates on it."  (*Id.* ¶ 78.)  More officers
arrived, and Officer DeSetto[14] asked the plaintiff to step out of the car, which "led to [the
plaintiff] being handcuffed, and almost tased by a police officer while in handcuffs."  (*Id.*)  The
plaintiff does not name the officers who handcuffed and "almost tased" him.

On June 23, 2023, the plaintiff spoke to his father and his mother about $3,000 that his
mother owed the plaintiff "for business dealings from 2018."  (*Id.* ¶ 83.)  The plaintiff's father
had to "get in between [the plaintiff] and [his mother.]"  (*Id.*)  "The police end[ed] up being
called."  (*Id.*)  When Officer Wittneben and other officers arrived, the plaintiff "showed Officer

---

[13] Greco is not a named defendant in the 3AC.

[14] DeSetto is not a named defendant in the 3AC.

Wittneben a 7+ minute video of the interaction that led to [the] 9-1-1 call." (*Id.*)[15] Officer Wittneben then placed the plaintiff under arrest "for assaulting [his mother]." (*Id.*) The plaintiff "resisted being placed in the vehicle as he did not commit a crime." (*Id.*) When the plaintiff got to the precinct, Officer Healy[16] "attempted to remove the plaintiff's jewelry from around his neck by pulling it over his head without unclipping the chain." (*Id.*) The plaintiff also alleges that he asked one of the officers to remove his handcuffs, but they were not removed until "roughly an hour or more" after the plaintiff was put in a holding cell. (*Id.*)

On July 7, 2023, Officer Catapano and Sergeant Deshawn Ziths[17] came to the plaintiff's house, showed him "a white piece of paper" and explained "the house visit was in regards to his open case." (*Id.* ¶ 84.) The officers "entered into the home without [the plaintiff's] permission," and Catapano handcuffed him with "his face against . . . the wall . . . ." (*Id.*) The plaintiff alleges Catapano made "contact with [the plaintiff's] private parts, feeling for the size of his manhood" as she frisked him. (*Id.*) The officers drove the plaintiff to the County Jail. (*Id.*) "[A]fter being arraigned, [the plaintiff] had to walk to the 113th Precinct on Baisley Boulevard from the Queens Criminal Courthouse in Kew Gardens, which is a 4 mile walk, one-way." (*Id.*)

On July 20, 2023, the plaintiff went to the 103rd Precinct "to obtain the police report for [a] shooting that involved [his vehicle]" "in 2014 or 2015." (*Id.* ¶ 85.)[18] "Officer Rodriguez[19] refused to give [the plaintiff] any specific details in regards to the shooting." (*Id.*) The plaintiff "then informed Officer Rodriguez that 2-3 years prior, [the plaintiff] came to the very same

---

[15] Wittneben is not a named defendant in the 3AC.

[16] Healy is not a named defendant in the 3AC.

[17] Catapano and Ziths are not named defendants in the 3AC.

[18] The plaintiff notes that Allen, another named defendant, was standing outside of the precinct at that time. (*Id.* ¶ 85.)

[19] Rodriguez is not a named defendant in the 3AC.

precinct to obtain the same information and was told the victim's name began with the letter 'O.'" (*Id.* ¶ 85.)  Then, another officer, Officer Caballero[20], noticed that the plaintiff was recording the interaction and "push[ed] [the plaintiff] out" of the precinct.  (*Id.*)

The plaintiff also claims that he "walked into the 113th Precinct and . . . upon presenting [his] identification," an unnamed officer "yelled out 'Personality Disorder!'" and unnamed officers "threatened to call an ambulance to take [him] to the hospital."  (*Id.* ¶¶ 43–44.)  The plaintiff does not say when this happened.

### b.    Private Actors

The plaintiff also makes a set of allegations against private actors who are not named as defendants in this action.  He alleges that his siblings and mother have physically and emotionally abused him since his childhood.  (*Id.* ¶¶ 2, 40, 55.)  The plaintiff further alleges that his siblings have been stealing and "tampering" with his "educational and work materials," electronics, medical equipment and clothing since 2018.  (*Id.* ¶¶ 31–32, 48, 74, 80.)  The plaintiff alleges that his family refused to let him exercise and that "the only food in the house for about six (6) months after [his] release from Zucker Hillside Hospital in February 2020 were potatoes." (*Id.* ¶¶ 48, 50.)  The plaintiff also alleges he has been "prohibited from leaving the house and it has cost him employment," a "normal occurrence since 2013."  (*Id.* ¶¶ 33, 38.)  He alleges that "[his] family has been trying to admit [him] to the hospital since 2018" and have gotten him "admitted to the hospital several times."  (*Id.* ¶¶ 54–55.)

In addition to his family, the plaintiff alleges that other private actors have wronged him. (*Id.* ¶¶ 5, 8, 35, 62, 66, 73, 81.)  The plaintiff alleges he has been sexually assaulted in instances that "have been caught on camera and the police have done nothing about it."  (*Id.* ¶¶ 5, 6.)  He

---

[20] Caballero is not a named defendant in the 3AC.

alleges that in March 2019, "Taj Bailey from NYHRC[21]" said he "could kill [the plaintiff's] whole family," and a few weeks later, the plaintiff's cousin "died as a headshot victim." (*Id.* ¶¶ 34–35.)

The plaintiff alleges that attorney Gregory Benneditto Haynes[22] handed him "bacteria-laced documents" on July 28, 2023. (*Id.* ¶ 86.)

## III.   Proposed Fourth Amended Complaint

On August 30, 2023, Magistrate Judge Lois Bloom ordered the plaintiff to file a corrected amended complaint by September 22, 2023 "naming as defendants all the officers he wishes to sue." (ECF No. 25.) The plaintiff did not file an amended complaint by September 22, 2023.

On October 27, 2023, the plaintiff moved for leave to file a fourth amended complaint because "[his] conglomerate ha[d] collected more information." (ECF No. 29.) Judge Bloom ordered the plaintiff to file a proposed fourth amended complaint ("4AC") by December 5, 2023. (ECF No. 31.)

The plaintiff filed the proposed 4AC on December 1, 2023. (ECF No. 34.) The 4AC is 119 pages long and names twenty-nine new defendants: Mayor Eric Adams, NYPD Edward A. Caban, First Deputy Commissioner Tania Kinsella, Chief of Department Jeffrey B. Maddrey and twenty-five Police Officers: Darnell Simon, Kenneth Miklas, Deshawn Ziths, Theodore Papadopoulos, Tyler Harper, Thomas Marzocchi, Steven Sprague, Steven O'Brien, Shawn Iglesias, Richard Wittneben, Nico Delorio, Nicholas Medina, Michael Matias, Maurice Richardson, Liam Healy, Justin Rodriguez, Julius Quinones, Joseph Greco, Ethan Curreri, Edward Jensen, Christopher Ryder, Abdulhadi Chalati, Andrico Caballero, Alana Catapano,

---

[21] The plaintiff does not clarify what this abbreviation stands for. Bailey is not a named defendant in the 3AC.

[22] Haynes is not a named defendant in the 3AC.

Abraheem Chaudhry.  (*Id.*)  The 4AC also names "'John Doe' Officers 1-30."  (*Id.*)  The allegations in the proposed 4AC are, for the most part, the same as the allegations in the 3AC, although the plaintiff includes additional detail about the interactions he described in the 3AC. The plaintiff also makes new allegations.  The allegations of the proposed 4AC are summarized below.

### c.      Law Enforcement

The plaintiff supplements his claim that Officer Allen[23] did not help him when he went to the 113th Precinct on July 4, 2020 to report several thefts.  He adds that "[o]ne of thefts [he] came to the precinct for was Identity Theft and its corresponding paperwork and Officer Allen kept asking [the plaintiff] for his identification, which is not necessary to receive identity theft paperwork."  (ECF No. 34 at 35 ¶ 55.)

The plaintiff reiterates his allegation that he "had an interaction with" Officer Kenneth Miklas and Officer Christophe Ryder on October 10, 2020.  (*Id.* at 38 ¶ 64.)  The plaintiff "cannot recall the interaction but took down their information as they were probably of no assistance."  (*Id.*)

The plaintiff adds detail to his allegation about his arrest on December 10, 2020, after a neighbor reported that the neighbor's son committed a crime.  (ECF No. 34 at 38 ¶ 68; ECF No. 22 ¶ 63.)  The plaintiff did not name the officers in the 3AC.  In the 4AC, the plaintiff says that the officers who arrested him are "Sergeant Simon, Officer Colello, Officer Tatzel, and Officer Blackburn."  (ECF No. 34 at 38 ¶ 68.)[24]

---

[23] Allen was a named defendant in the 3AC and is also a named defendant in the 4AC.

[24] Simon was not a named defendant in the 3AC; he is a defendant in the proposed 4AC.  Collelo, Tatzel and Blackburn were all named defendants in the 3AC and are also named defendants in the 4AC.

The plaintiff adds a new allegation that in February 2022, he "reported" to the 113th Precinct that he was the victim of "at least two [] instances of sodomy and/or sexual misconduct" and that he "interacted via text message" with Detective Papadopoulos.[25]  (ECF No. 34 at 12 ¶ 6.)  The plaintiff attaches screenshots of his text messages with Papadopoulos.  (ECF No. 34, Exhibit A.)  Papadopoulos texted the plaintiff that the plaintiff "hung up on [him] during [his] interview," and that "[the plaintiff] [was] not pick[ing] up the phone."  (*Id.*)  Papadopoulos asked the plaintiff to "come to [Papadopoulos's ] office tomorrow so [they] can try and make a phone call to [one of the alleged perpetrators] and see if she admits to anything."  (*Id.*)  The plaintiff refused.  (*Id.*)  The text messages show that the plaintiff repeatedly texted Papadopoulos during February and March 2022, and that Papadopoulos did not respond.  (*Id.*)  More than a year later, on August 28, 2023, the plaintiff texted Papadopoulos asking for "a physical copy of the police report(s) for this."  (*Id.*)  Papadopoulos responded, "Who is this[?]"  (*Id.*)  The plaintiff texted, "You're a joke."  (*Id.*)  Papadopoulos asked, "Did I arrest you and your [sic] mad?"  (*Id.*)  The plaintiff responds, "Have you had anything up your ass officer?"  (*Id.*)  Papadopoulos sent the plaintiff's arrest photo and said, "Nice photo," to which the plaintiff responded, "Are you quitting your job?"  (*Id.*)

The plaintiff adds five other new allegations.

First, he says that on April 5, 2022, he tried to file a report at the 113th precinct "only to be met with pushback from Officer Chalati."  (ECF No. 34 at 57 ¶ 79.)[26]

Second, he claims that on August 2, 2022, he was trying to report a crime and "received resistance from Officer Chalati."  (*Id.* at 57 ¶ 81.)  Officer Chalati "stared [him] down in an

---

[25] Papadopoulos was not a named defendant in the 3AC, but is a defendant in the proposed 4AC.

[26] Chalati was not a named defendant in the 3AC; he is a defendant in the proposed 4AC.

intimidating fashion as if to convey '[g]et the f-ck out of here,'" and the plaintiff left the precinct.  (*Id.*)

Third, the plaintiff claims that he had a conversation with Officers Quinones and Jenson[27] on August 17, 2022, but "can not fully recall the contents of the . . . interaction that day;" "[t]o the best of [his]ability, he called to inquire about identity theft, as he'd received two[] or more years of pushback regarding filing a police report regarding identity theft."  (*Id.* at 58 ¶ 82.)

Fourth, the plaintiff alleges that, he "went to the 113th Precinct for assistance" on September 8, 2022, and "was met by pushback from Officer Healy, who would not be of assistance."  (*Id.* at 62 ¶ 92.)  "The officer refused to take a police report."  (*Id.*)

Fifth, the plaintiff claims that on June 24, 2023, he returned to the 113th precinct for the "information of the officers from the arrest" the day before, and Officer Richardson[28] "provided [the plaintiff] a yellow Post-it note that included the names of the police officers with some of their names missing the vowels in them."  (*Id.* at 73 ¶ 110.)

The plaintiff adds names to his allegation that he called the police on August 27, 2022 because of his brother's "erratic[]" behavior.  (*Id.* at 58 ¶ 83.)  Police officers, whom the plaintiff did not name in the 3AC, handcuffed the plaintiff, took him to the hospital, and did not return items they seized from the plaintiff.  (*Id.*)  In the proposed 4AC, he alleges that "some of those officers [present] included Officer Marzocchi, Officer Obrien, Officer Matias, Officer Chaudhry, Officer Jensen, and Sergeant Miklas."[29]  (*Id.*)

---

[27] Quinones and Jenson were not defendants in the 3AC; they are named as defendants in the proposed 4AC.  The plaintiff also spells "Jenson" as "Jensen."

[28] Richardson was not a named defendant in the 3AC; he is a named defendant in the proposed 4AC.

[29] These officers were not defendants in the 3AC; they are named defendants in the proposed 4AC.

The plaintiff repeats his allegations about an August 28, 2022 incident at the plaintiff's family home when the plaintiff's brother locked the plaintiff and their father out of their house. (*Id.* at 59–60 ¶¶ 85–87.)  The plaintiff says that Officer Iglesias and another officer convinced the plaintiff's brother to open the door, and that the plaintiff and his brother started fighting. (*Id.*)

The plaintiff also repeats his allegations about a November 19, 2022 incident in which Officer Delorio[30] and other officers arrived at his house and handcuffed him without explanation, and that Delorio bent him over and pushed his face into a fence.  (ECF No. 34 at 62–63 ¶ 93.)  In the 3AC, the plaintiff alleged that officers dropped him on his right shoulder even though the plaintiff told them that it was injured; in the 4AC, the plaintiff alleges that he "informed Officer Delorio of a shoulder injury and Officer Delorio did not place [him] on his feet, but switched which arm he carried [him] with."  (*Id.*)

In connection with that same incident, the plaintiff alleged in the 3AC that an officer gave him the "option of the hospital [or] jail" (ECF No. 22 at 28 ¶ 76).  In the 4AC, he says that the officer was Officer Greco.[31]  (ECF No. 34 at 63 ¶ 94.)  He reiterates the allegation in the 3AC that his handcuffs were too tight, causing bruises and lasting injury, and that he complained about this to Officer Greco.  (*Id.* at 63–63 ¶ 94)

The plaintiff repeats his claim that a white male officer pulled him over on March 16, 2023, told him that there were no license plates on his car, that "police officer(s)" asked him to get out of his vehicle, and that the plaintiff was handcuffed and almost tased by Officer DeSetto.[32]  (*Id.* at 66–67 ¶ 101.)  The plaintiff adds Officer Curreri as a defendant in the 4AC

---

[30] Delorio was not a named defendant in the 3AC; he is a defendant in the proposed 4AC.

[31] Greco was not a named defendant in the 3AC; he is a defendant in the proposed 4AC.

[32] DeSetto is not a named defendant in any complaint.

because Officer Curreri's name was "on the Summons [the plaintiff] received that day." (*Id.* at 67 ¶ 101.)

The plaintiff adds also details to his description of the June 23, 2023 incident in which the plaintiff argued with his parents about $3,000 that the plaintiff said his mother owed him for business dealings. In the proposed 4AC, the plaintiff says that "[s]everal officers, including Officer Healy, Officer Wittneben, Officer Sprague and Officer Medina,[33] arrive at the scene and step inside in the house." (ECF No. 34 at 69 ¶ 107.) The plaintiff "show[ed] Officer Wittneben a 7+ minute video of the interaction that led to the 9-1-1 call." (*Id.* at 69–70 ¶ 107.) "At the conclusion of showing Officer Wittneben the video, Officer Medina requested that [the plaintiff] place his phone down." (*Id.* at 70 ¶ 108.) "[The plaintiff] was then handcuffed by Officer Medina and Officer Wittneben assist[ed]." (*Id.*) The plaintiff repeats the claim that Officer Healy[34] tried to take the plaintiff's "jewelry from around his neck by pulling it over his head without unclipping the chain." (*Id.* at 73 ¶ 109.)

The plaintiff also repeats the allegation that Officer Catapano and Officer Deshawn Ziths arrived at the plaintiff's family home on July 7, 2023, and that Catapano handcuffed the plaintiff and frisked the plaintiff's groin area before transporting him to county jail. (ECF No. 34 at 74–75 ¶ 111.) The only difference is that he names them as defendants in the 4AC.

The plaintiff adds to his claim about a July 20, 2023 interaction with officers at 103rd Precinct. The plaintiff asked for the police report for a shooting from years earlier involving his car. Officer Rodriguez[35] refused to give the plaintiff details and Officer Caballero told the

---

[33] None of these officers were defendants in the 3AC; they are all defendants in the proposed 4AC.

[34] Healy is not a named defendant in the 3AC; he is a named defendant in the proposed 4AC.

[35] Rodriguez is not a named defendant in the 3AC; he is a named defendant in the proposed 4AC.

plaintiff to leave the precinct because the plaintiff was recording their conversation.[36]  In the 4AC, the plaintiff adds that "Officer Caballero pushed [the plaintiff] out while Officer Harper followed suit in support."  (*Id.* at 76 ¶ 112.)[37]

### d.   Private Actors

The plaintiff repeats his allegations against his family, (ECF No. 34 ¶¶ 7, 20, 25, 26, 38, 41, 44, 45, 46, 51, 53, 56, 84, 89, 90), and that Taj Bailey threatened him and his family about a week before his cousin was shot in the head and killed (ECF No. 34 at 31 ¶ 41).

## LEGAL STANDARD

Because the plaintiff is proceeding *pro se*, his submissions are "liberally construed in his favor," *Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995), and read to "raise the strongest arguments that they suggest," *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).  Although the Court is "obligated to draw the most favorable inferences" that a *pro se* complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled."  *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).

A plaintiff may amend his pleading "once as a matter of course within . . . 21 days after serving it, or . . . 21 days after service of [a responsive pleading or a motion under Rule 12(b)]." Fed. R. Civ. P. 15(a)(1).  "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2); *Gross v. PennyMac Loan Servs., LLC*, No. 20-CV-4192, 2021 WL 2634764, at *1 (E.D.N.Y. June 25, 2021).  It is "within the sound discretion of the district court to grant or deny leave to amend."

---

[36] In the 3AC, the plaintiff alleged that Allen was standing outside of the precinct when this occurred.  In the proposed 4AC, the plaintiff alleges that "an officer who resembled Officer Allen was standing outside" the precinct.  (ECF No. 34 at 75 ¶ 112.)

[37] Harper and Caballero are not named defendants in the 3AC.  They are both named defendants in the proposed 4AC.

*Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 447 (2d Cir. 2019) (internal quotation marks and citation omitted). "Although Rule 15 admonishes courts to freely give leave when justice so requires, it does not thereby mandate that courts grant leave in the face of reasons to deny it." *Bat, LLC v. TD Bank, N.A.*, No. 15-CV-5839, 2018 WL 4693644, at *4 (E.D.N.Y. Sep. 28, 2018) (internal citation and quotation marks omitted) (quoting *Forman v. Davis*, 371 U.S. 178, 182 (1962)). Leave may be denied where the proposed amendment would be futile — where the "amended portion of the complaint would fail to state a cause of action." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *see Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019).

## DISCUSSION

### I.   Officers Blackburn, Colello, Tatzel, Simon

The plaintiff moves to amend his claim that officers arrested him at his home on December 10, 2020. He seeks to add detail, make claims against Officers Blackburn, Colello and Tatzel, and add Officer Simon as a defendant. (ECF No. 22 ¶¶ 63–64.) The defendants do not oppose. (ECF No. 46.) Accordingly, the plaintiff's motion for these amendments is granted. *See Price v. City*, No. 15-CV-5871, 2017 WL 1437202, at *3 (S.D.N.Y. Apr. 21, 2017) ("The City Defendants have not opposed, and so consent to, an amendment of Plaintiff's complaint that would 'add claims against individual defendants regarding the November 17, 2016, and January 24, 2017 incidents.' Plaintiff's motion to amend to add these claims is granted." (internal citation omitted)).

### II.   Officer Allen

The defendants do not oppose the plaintiff's motion to amend to add claims or allegations against Officer Allen about a July 4, 2020 interaction in which the plaintiff alleges that Officer

Allen did not help him when he wanted to report a theft. (ECF No. 22 ¶ 46; ECF No. 34 at 35 ¶ 55; ECF No. 46.) But this conduct does not plausibly state a claim that Allen violated the plaintiff's constitutional rights.

Nor do the plaintiff's other allegations against Allen in the 3AC and the 4AC plausibly state a claim. In the 3AC, the plaintiff alleged that Allen was standing outside the precinct when the plaintiff asked another officer for a police report; in the proposed 4AC, the plaintiff alleges that "an officer who resembled Officer Allen was standing outside" the precinct. (ECF No. 34 at 75 ¶ 112.) Even if Allen was standing outside the precinct, the plaintiff has not alleged that he did anything to violate the plaintiff's rights. *Reich v. City of New York*, No. 19-CV-6491, 2021 WL 11628271, at *6 (E.D.N.Y. July 23, 2021) ("[T]o be held liable in his personal capacity, an official must directly participate in the violation of a constitutional right or fail to remedy the violation after learning of it." (cleaned up)), *report and recommendation adopted*, No. 19-CV-6491, 2021 WL 5783382 (E.D.N.Y. Dec. 7, 2021). Accordingly, the plaintiff's motion to amend with respect to Officer Allen is denied. "When a complaint fails to comply with [the] requirements [contained in Rule 8], the district court has the power, on motion or sua sponte, to dismiss the complaint or to strike such parts as are redundant or immaterial." *McCarthy v. Kaplan*, No. 24-CV-3286, 2024 WL 2862374, at *2 (E.D.N.Y. June 6, 2024). Moreover, because the complaint does not state a claim against Allen, he is dismissed as a defendant in this action. *See id.*

### III.    Officers Delorio and Greco

The defendants do not oppose the plaintiff's motion to amend the complaint to add Officers Delorio and Greco as defendants and to the claim about the November 19, 2022 arrest at the plaintiff's family home (ECF No. 46), during which Officer Delorio allegedly "picked [the plaintiff] up, bent [him] over, and forced [his] face against his fence," other officers dropped the

plaintiff on his injured shoulder, and the plaintiff was handcuffed too tightly. (ECF No. 22 ¶ 75.) In the proposed 4AC, the plaintiff adds additional details — that he "informed Officer Delorio of a shoulder injury and Officer Delorio did not place [him] on his feet, but switched which arm he carried [him] with." (ECF No. 34 at 63 ¶ 93.) He also says that it was Officer Greco who gave him the choice between "hospital or jail." (*Id.* at 63 ¶ 94.)

The motion to amend as to this claim is granted. *See Price*, 2017 WL 1437202, at *3. Moreover, "[a]t this early stage, the Court cannot say as a matter of law that the amount of force used" by Delorio and Greco "was objectively reasonable," so the plaintiff's proposed amendment is not futile. *See Spencer v. Sullivan Cnty.*, No. 18-CV-365, 2019 WL 4514011, at *7 (S.D.N.Y. Sept. 19, 2019).

## IV.    Officers Catapano and Ziths

The defendants also do not oppose the plaintiff's motion to amend to add Officers Catapano and Ziths as defendants to his claim about a July 7, 2023 arrest involving those two officers. (ECF No. 46.) Accordingly, the plaintiff's motion to amend regarding this claim is granted. *See Price*, 2017 WL 1437202, at *3; *Spencer*, 2019 WL 4514011, at *7.

## V.    Officers Marzocchi, Obrien, Matias, Chaudhry, Jensen and Miklas

In the 3AC and the proposed 4AC, the plaintiff alleges that that police officers responded to his August 27, 2022 call about his brother's "erratic[]" behavior, and handcuffed the plaintiff, took him to the hospital, and took items that they did not return. (ECF No. 22 ¶ 69; ECF No. 34 at 58 ¶ 83.) The plaintiff did not identify the officers in the 3AC. In the proposed 4AC, he alleges that "some of those officers included Officer Marzocchi, Officer O'brien, Officer Matias, Officer Chaudhry, Officer Jensen, and Sergeant Miklas." (ECF No. 34 at 58 ¶ 83.)

The defendants oppose the plaintiff's motion to amend to add Officers Marzocchi, Obrien, Matias, Chaudhry, Jensen and Miklas as defendants, because the complaint is "entirely

devoid of any specific allegation" about what the officers did, and the plaintiff "fails to allege the manner in which any of these individuals had personal involvement in the claims plaintiff is asserting."  (ECF No. 46 at 23.)

"[I]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)).  "[A] plaintiff must plead . . . 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  "The failure to plead plausible facts as to the personal involvement of a government official renders the claim fatally defective on its face."  *Ligonde v. Marriot Hotel Servs.*, No. 20-CV-3680, 2021 U.S. Dist. LEXIS 149435, at *15 (E.D.N.Y. Aug. 5, 2021) (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987)) (internal quotation marks omitted).

The plaintiff has not plead sufficient facts to show that Officers Marzocchi, Obrien, Matias, Chaudhry, Jensen and Miklas were personally involved in depriving him of his rights. He alleges only that the officers "arrived" at the scene, which is conclusory and does not explain how each officer's "own individual actions[] [have] violated the Constitution."  (ECF No. 34 at 58 ¶ 83.)  *See Tangreti*, 983 F.3d at 618; *see also Reich v. City of New York*, No. 19-CV-6491, 2021 WL 11628271, at *6 (E.D.N.Y. July 23, 2021) (holding the plaintiff did not sufficiently allege an unlawful search and seizure where he did "not provide any details about his interactions" with the proposed defendant and "only state[d] that [the proposed defendant] was his 'arresting officer'"), *report and recommendation adopted*, No. 19-CV-6491, 2021 WL

5783382 (E.D.N.Y. Dec. 7, 2021).  Accordingly, the plaintiff's request to add Marzocchi, Obrien, Matias, Chaudhry, Jensen and Miklas as defendants is denied.[38]

## VI.   Officer Curreri

The plaintiff moves to amend to add Curreri as a defendant to his claim that a police officer pulled him over on March 16, 2023, and told him that his car had no license plates, and that another handcuffed and "almost tased" the plaintiff.  (ECF No. 22 ¶ 78; ECF No. 34 at 66–67 ¶¶ 100–101.)  The only allegation about Officer Curreri is that his name was on a summons issued to the plaintiff.  (ECF No. 22 ¶ 78; ECF No. 34 at 67 ¶ 101.)

This is not sufficient to allege Curreri's personal involvement in any violation of the plaintiff's federal rights.  *See Reich*, 2021 WL 11628271, at *6 ("[T]o be held liable in his personal capacity, an official must directly participate in the violation of a constitutional right or fail to remedy the violation after learning of it." (internal quotation marks omitted)), *report and recommendation adopted*, No. 19-CV-6491, 2021 WL 5783382 (E.D.N.Y. Dec. 7, 2021); *see also Morris v. City of New York*, No. 14-CV-1749, 2015 WL 1914906, at *6 (E.D.N.Y. Apr. 27, 2015) ("A police officer cannot be held liable for failure to intervene unless such a failure permitted fellow officers to 'violate a suspect's clearly established statutory or constitutional rights' and was under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights." (quoting *Ricciuti v. N.Y.C. Transit*

---

[38] The plaintiff also alleges that he "had an interaction with" Miklas on October 10, 2020.  (ECF No. 34 at 38 ¶ 64.)  The plaintiff "cannot recall the interaction but took down [his] information as [he was] probably of no assistance."  (*Id.*)  In addition, the plaintiff alleges that he had a conversation with Jensen on August 17, 2022, but he "can not fully recall the contents of the . . . interaction that day," "[t]o the best of [his]ability, he called to inquire about identity theft, as he'd received two (2) or more years of pushback regarding filing a police report regarding identity theft."  (*Id.* at 58 ¶ 82.)  These allegations do not state a cognizable claim under § 1983.  *See Wilson v. City of New York*, No. 18-CV-7301, 2020 WL 5709200, at *5 (E.D.N.Y. Sept. 24, 2020).  Accordingly, the plaintiff is denied leave to amend to add Miklas and Jensen as defendants.

*Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)).  Accordingly, the plaintiff is denied leave to amend to add Curreri as a defendant.

## VII.   Officer Richardson

The plaintiff moves to amend the complaint to add Officer Richardson as a defendant to the plaintiff's claim that on June 24, 2023 Officer Richardson gave the plaintiff "a yellow Post-it note" with the names of police officers who were involved in arresting the plaintiff the day before; the plaintiff alleges that "some of their names [were] missing the vowels in them."  (ECF No. 34 at 73–74 ¶ 110.)  This allegation does not state a claim upon which relief can be granted. *See Vasquez v. Town of Haverstraw Police Dep't*, No. 15-CV-8852, 2016 U.S. Dist. LEXIS 203059, at *3–4 (S.D.N.Y. May 20, 2016) (citing *Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)).  Accordingly, amendment would be futile, and the plaintiff is denied leave to add Richardson as a defendant.

## VIII.   Officers Harper, Caballero and Rodriguez

The plaintiff seeks to add facts to his claim about a July 20, 2023 interaction at the 103rd Precinct when Officer Rodriguez would not give the plaintiff details about a years-old shooting and Officer Caballero told him to leave the precinct because the plaintiff was recording.  (ECF No. 22 ¶ 85; ECF No. 34 at 75–76 ¶ 112.)  In the 4AC, the plaintiff adds that "Officer Caballero pushed [the plaintiff] out while Officer Harper followed suit in support."  (ECF No. 34 at 76 ¶ 112.)  Failing to take a report or to provide details from an existing report and keeping someone from recording in a precinct are not cognizable § 1983 claims.  *See Vasquez*, 2016 U.S. Dist. LEXIS 203059, at *3–4; *see also Buari v. City of New York*, 530 F. Supp. 3d 356, 391 (S.D.N.Y. 2021).  Accordingly, the plaintiff is denied leave to amend to add Harper, Caballero and Rodriguez as defendants in this action.

## IX.   Officers Ryder, Chalati, Quinones, Iglesias and Papadopoulos

The plaintiff also moves to amend the complaint to add Officers Ryder, Chalati, Quinones, Iglesias and Papadopoulos as defendants.  The plaintiff alleges that he "had an interaction with" Ryder on October 10, 2020, which he "cannot recall," but "took down [his] information as [he was] probably of no assistance."  (ECF No. 34 at 38 ¶ 64.)

The plaintiff alleges that Officer Chalati gave him "pushback" on April 5, 2022, and "resistance" on August 2, 2022 when he tried to file a report at the 113th precinct; on August 2, 2022, Officer Chalati "stared [him] down in an intimidating fashion as if to convey '[g]et the f-ck out of here.'"  (ECF No. 34 at 57 ¶¶ 79, 81.)

The plaintiff alleges that he spoke to Officer Quinones on August 17, 2022, but "can not fully recall the contents of the . . . interaction that day," "[t]o the best of [his]ability, he called to inquire about identity theft, as he'd received two (2) or more years of pushback regarding filing a police report regarding identity theft."  (*Id.* at 58 ¶ 82.)

The plaintiff alleges that Officer Iglesias was one of the officers who responded to his house on August 28, 2022 when the plaintiff's brother locked the plaintiff and their father out of their house.  (*Id.* at 59–60 ¶¶ 85–87.)  The plaintiff and his brother had a fight after the officers convinced the brother to open the door.  The plaintiff alleges that "Officer Iglesias' partner turned his body camera off to explain to [the plaintiff's brother] that he could 'have his credentials revoked for this[,]'" but the plaintiff "was unsure if Officer Iglesias overheard that interaction from a distance."  (*Id.* at 60 ¶ 87.)

The plaintiff makes claims about the series of text messages with Officer Papadopoulos, after the plaintiff reported in February 2022 that he was the victim of "at least two [] instances of sodomy and/or sexual misconduct."  (ECF No. 34 at 12 ¶ 6.)  There were additional text messages between the two more than a year later.  (ECF No. 34, Exhibit A.)

The plaintiff's allegations against Ryder, Miklas, Chalati, Quinones, Jensen, Iglesias and Papadopoulos do not state cognizable claims under § 1983. A police officer's failure to take a report or to investigate are not actionable. *See Wilson v. City of New York*, No. 18-CV-7301, 2020 WL 5709200, at *5 (E.D.N.Y. Sept. 24, 2020) ("Police officers have discretion to conduct investigations and initiate arrests, and are charged with acting for the benefit of the public, not private citizens. Thus, police officers have no affirmative duty to investigate complaints, as the government and its agents are under no general duty to provide public services or protection to individual citizens. Because the plaintiff has no constitutional right to have the police initiate an investigation, this claim is dismissed." (cleaned up)). Nor is rudeness a cause of action. *Vasquez*, 2016 U.S. Dist. LEXIS 203059, at *3–4 ("Rudeness, such as a statement that Plaintiff should 'shut up' is also not generally actionable."). Accordingly, the plaintiff is denied leave to amend to add Ryder, Miklas, Chalati, Quinones, Jensen, Iglesias and Papadopoulos as defendants in this action.

## X.    Officers Sprague, Wittneben, Medina and Healy

The plaintiff asks to amend his complaint about events on June 23, 2023, when the police arrested him after he argued with his mother about money she owed him. (ECF No. 22 ¶ 83.) In the proposed 4AC, the plaintiff claims that "[s]everal officers, including Officer Healy, Officer Wittneben, Officer Sprague and Officer Medina," "step[ped] inside in the house," Officer Wittneben watched a "video of the interaction that led to the 9-1-1 call," and that Officer Medina handcuffed the plaintiff with Officer Wittneben's assistance. (ECF No. 34 at 69–73 ¶¶ 107–108.) Officer Healy tried to remove the plaintiff's "jewelry from around his neck by pulling it over his head without unclipping the chain." (*Id.* at 73 ¶ 109.)

The plaintiff's request for leave to amend to add Sprague is denied because the plaintiff failed to mention that Sprague did anything other than arrive at the scene. This is insufficient to

plead a colorable § 1983 claim.  *See Tangreti*, 983 F.3d at 618.  Accordingly, amendment to add Sprague would be futile.

Nor do the allegations against Wittneben, Medina and Healy state colorable § 1983 claims.  Wittneben watched a video and assisted Medina with the plaintiff's arrest, which does not support an inference that either officer violated the plaintiff's rights.  *See Reich*, 2021 WL 11628271, at *6.  Healy only tried to remove the plaintiff's jewelry, which is not a violation of the plaintiff's rights.  *Vasquez*, 2016 U.S. Dist. LEXIS 203059, at *3–4.  The proposed amendments to add Wittneben, Medina and Healy as defendants would be futile.  The plaintiff is therefore denied leave to amend to add Sprague, Wittneben, Medina and Healy as defendants.

## XI.  Mayor Adams. Police Chief Caban, First Deputy Police Chief Kinsella and Chief of Department Maddrey

The plaintiff is denied leave to amend to add Mayor Adams,[39] Police Chief Caban, First Deputy Police Chief Kinsella and Chief of Department Maddrey as defendants because aside from adding their names, he does not allege in the 3AC or the 4AC that they did anything.  *See Tangreti*, 983 F.3d at 618; *see, e.g.*, *Abadi v. NYU Langone Health Sys.*, No. 21-CV-11073, 2023 WL 8461654, at *4 (S.D.N.Y. Dec. 7, 2023) (dismissing claims against defendants, in the proposed complaint, where no factual allegations were made against them); *Myers v. City of New York*, 2012 WL 3776707, at *3 (S.D.N.Y. Aug. 29, 2012) (dismissing action against party where "her name appears nowhere in the Complaint" but is only listed in the caption and the list of defendants), *aff'd,* 529 F. App'x 105 (2d Cir. 2013); *Schiff v. Suffolk Cnty. Police Dep't*, No. 12-CV-1410, 2015 WL 1774704, at *7 (E.D.N.Y. Apr. 20, 2015) ("Here, upon a review of plaintiff's proposed 3AC, there are no substantive allegations against any of these defendants

---

[39] In his claim about Taj Bailey, the plaintiff alleges that "Taj Bailey is an associate of Mayor Adams," (ECF No. 34 at 31–32 ¶¶ 41, 43) which is not sufficient to sustain a § 1983 claim against the mayor.

other than including the names of these defendants in the caption and invoking them without context in the complaint. . . . Accordingly, plaintiff has not alleged a plausible Section 1983 claim against them, and the motion to amend as to these defendants must be denied.").

None of these proposed defendants may be held liable under § 1983 just because they employ or supervise someone who violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); *Fredricks v. Renze*, No. 22-CV-7274, 2023 WL 1869042, at *3 (S.D.N.Y. Feb. 6, 2023).

The plaintiff is thus denied leave to amend to add as defendants Mayor Adams, Police Chief Caban, First Deputy Police Chief Kinsella and Chief of Department Maddrey.

## XII.  John Does 1–30

Any claims that the plaintiff seeks to bring against the John Doe defendants are time-barred by the three-year statute of limitations. *Houston v. Highland Care Ctr., Inc.*, No. 28-CV-8186, 2024 WL 638721, at *3 (E.D.N.Y Jan 26, 2024) (citing *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013)). The plaintiff's "failure to identify any of the remaining John Doe officers in his Amended Complaint requires their dismissal from this action, though the Court does so without prejudice to Plaintiff renewing his claims should he be able to identify the identities of the remaining John Doe officers." *Jones v. Rivera*, No. 13-CV-1042, 2015 WL 8362766, at *4 (S.D.N.Y. Dec. 7, 2015).

**CONCLUSION**

The plaintiff's motion for leave to file a fourth amended complaint is granted in part and denied in part, as follows:[40]

- **GRANTED** to add allegations or claims against Blackburn, Colello and Tatzel;

- **GRANTED** to add Simon as a defendant;

- **DENIED** to add allegations or claims against Allen;

- **GRANTED** to add Delorio and Greco as defendants;

- **GRANTED** to add Catapano and Ziths as defendants;

- **DENIED** to add Marzocchi, Obrien, Matias, Chaudhry, Jensen and Miklas as defendants;

- **DENIED** to add Curreri as a defendant;

- **DENIED** to add Richardson as a defendant;

- **DENIED** to add Harper, Caballero and Rodriguez as defendants;

- **DENIED** to add Ryder, Miklas, Chalati, Quinones, Jensen, Iglesias and Papadopoulos as defendants;

- **DENIED** to add Sprague, Medina, Wittneben and Healy as defendants; and

- **DENIED** to add Mayor Adams, Police Chief Caban, First Deputy Police Chief Kinsella and Chief of Department Maddrey as defendants.

In addition, Allen is dismissed from the action with prejudice. The John Doe defendants are dismissed without prejudice.

The Clerk of Court is respectfully directed to mail a copy of this Memorandum and Order to the Plaintiff and note the mailing on the docket.

Even though the plaintiff has paid the filing fee to bring this action, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good

---

[40] *See Bradshaw v. Marshal*, No. 21-CV-0826, 2022 WL 3152363, at *9 (N.D.N.Y. Aug. 8, 2022); *Little v. Soulia*, No. 19-CV-0263, 2020 WL 12801983, at *4–5 (N.D.N.Y Jan. 13, 2020).

faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

**SO ORDERED.**

s/Ann M. Donnelly
_____
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
        September 18, 2024